IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jonothan Christian Vick, | ) | C/A No. 0:14-3180-RMG-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden Broad River Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Jonothan Christian Vick, a self-represented state prisoner, filed this petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant

to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation

on the respondent's motion for summary judgment. (ECF No. 33.) Pursuant to Roseboro v.

Garrison, 528 F.2d 309 (4th Cir. 1975), Vick was advised of the summary judgment and dismissal

procedures and the possible consequences if he failed to respond adequately to the respondent's

motion. (ECF No. 35.) Vick filed a response in opposition to the respondent's motion. (ECF No.

40.) Having carefully considered the parties' submissions and the record in this case, the court

concludes that the respondent's motion for summary judgment should be granted and Vick's Petition

denied.

## BACKGROUND

Vick was indicted in January 2006 in Spartanburg County for kidnapping, criminal sexual

conduct in the first degree, and murder (2006-GS-42-309, -310, -311). (App. at 1017-22, ECF No.

34-6 at 19-24.) Vick was represented by Christopher D. Brough, Esquire, and on November 27-30,

2006 was tried before a jury and found guilty as charged. The circuit court sentenced Vick to life

imprisonment for murder, thirty years' imprisonment for criminal sexual conduct in the first degree, and thirty years' imprisonment for kidnapping. (App at 745-46, ECF No. 34-4 at 67-68.)

Vick timely appealed and was represented by Robert M. Dudek, Esquire, Chief Appellate Defender, who filed an final brief on Vick's behalf that presented the following questions:

1.    Whether the court erred by allowing Darlene Reeves to testify that while the decedent was doing her hair at the beauty shop appellant's mother telephoned the decedent and asked her to fix appellant's hair and that decedent related to Reeves her exasperation about the situation, and the decedent told Reeves would not accommodate appellant, since this testimony was prejudicial hearsay since the state's theory was that appellant later sexually assaulted and killed the decedent at the beauty shop at some time not far removed the phone call?.

2.    Whether appellant's thirty year sentence for kidnapping should be vacated pursuant to S.C. Code § 16-3-910 since he also was sentenced for murder?

(App. at 752, ECF No. 34-4 at 74) (errors in original). After hearing oral argument, the South Carolina Court of Appeals issued an opinion on June 25, 2009 affirming in part and vacating in part Vick's convictions. State v. Vick, 382 S.E.2d 275 (S.C. Ct. App. 2009); (ECF No. 34-18 at 22-36.) Specifically, the court vacated Vick's kidnapping sentence as erroneous. (Id.) Vick filed a petition for rehearing on July 9, 2009, which was denied. (ECF No. 34-18 at 37-40; App. at 808, ECF No. 34-4 at 130.) The remittitur was issued on October 27, 2009. (ECF No. 31-10.)

Vick filed a *pro se* application for post-conviction relief ("PCR") on November 9, 2009 in which he raised the following claims:

(a)    Ineffective Assistance of Councel
     •    Failure to provide expert DNA witness

(b)    Ineffective Assistance of Appealant Councel
     •    Failure to use valid direct appeal issue



(See Vick v. State of South Carolina, 09-CP-42-6158; App. at 810-16, ECF No. 34-4 at 132-38.)

The State filed a return. (App. at 817-21, ECF No. 34-4 at 139-43.) Vick, through counsel David

W. Melnyk, Esquire, filed two amendments to Vick's PCR application that raised the following

additional claims of ineffective assistance of counsel:

a.    Failure to call Defense DNA expert to testify at trial. The Defense had a DNA expert that had reviewed the case and would have been able to refute and/or rebut the testimony of the State's expert witness. The Applicant wanted the DNA expert to testify but Defense counsel refused to put the expert on the stand;

b.    Neither of Applicant's trial attorneys came to meet with him to prepare for the trial in the two weeks preceding the trial date. The Applicant attempted to contact his attorneys because he wanted to further assist in his defense but his attorneys did not come to visit him at the detention center;

c.    Applicant's attorneys never came to visit him at the detention center during the course of the trial even though he specifically asked that they do so so that he may provide input to his defense and case strategy;

d.    Applicant's counsel never explained or discussed the pros and cons of the Applicant taking the witness stand during his trial until just a few minutes before he would have taken the stand. The Applicant wanted to testify on his own behalf but was told by his attorneys that if he did they could not protect his family's safety;

e.    The defense attorneys did not interview a potential material witness, a Mr. Mason, and did not subpoena him to Court to testify. Mr. Mason's testimony could have created reasonable doubt in jurors' minds as to whether or not the Applicant was guilty;

f.    The defense attorneys failed to adequately pursue a potential alibi witness, Mr. Whipple. Mr. Whipple's testimony could have created reasonable doubt in the jurors' minds as to whether or not the Applicant was guilty;

g.    The defense attorneys stipulated to the DNA analysis of the pubic hair. DNA evidence was a key component of the State's case, stipulating to it rather than requiring the State to lay a proper foundation for such evidence reduced the State's burden and prevented the defense from offering objections to the evidence;

h.    The defense failed to adequately cross examine State's witness Diane Harris. The witness direct testimony was vague and ambiguous as to whether or not she actually could identify Mr. Vick as being present at the scene of the crime. Defense counsel should have exploited this issue to diminish the witness's credibility and the weight of her testimony. The only material question asked by defense counsel was whether or not she took good notice of the person that she saw because she was scared;

i.    Defense counsel was aware that a potential juror was the friend of the best friend of the victim. Counsel should have moved to strike this person for cause and if that was denied should have used one of his strikes to exclude her from the jury because of her potential bias against the Applicant;

j.    Defense counsel failed to adequately argue the motion to change venue in that he only presented one newspaper article to the court in support of the motion when, in fact, there were approximately 50 articles, news stories, etc. that could have been presented to further show the basis for the motion;

k.    State's exhibit 156 contained items described by the State's witnesses as pubic hair from the victim and a comb that was used to collect samples from the pubic hair for DNA analysis. This exhibit was never admitted into evidence. Despite this fact the State was allowed to reference the items as evidence in its closing argument. Defense counsel should have argued as part of his directed verdict motion that since the items were not admitted they, nor any other evidence directly related to them, should be considered by the jury as evidence that could be used to establish guilt beyond a reasonable doubt. In addition, Defense counsel should have asked for a limiting instruction from the Court prohibiting the State from mentioning the items, or any related evidence in its closing as an improper argument of facts not in evidence. Finally, Defense counsel should not have mentioned the items in his closing because they were not in evidence. The only DNA link between the victim and the Defendant was on the items marked as State's Exhibit 156.

l.    Defense counsel failed to object to improper character evidence offered by the State though its witness Michael Pace under Rule 404 SCRE. Mr. Pace was asked ". . . would you characterize the comments that Mr. Vick made . . .".

(App. at 823-31, ECF No. 34-4 at 145-53.)   On November 4, 2010, the PCR court held an

evidentiary hearing at which Vick appeared and testified and continued to be represented by David



W. Melnyk, Esquire. By order filed February 3, 2011, the PCR court denied and dismissed with prejudice Vick's PCR application. (App. at 1003-16, ECF No. ECF No. 34-6 at 5-18.)

On appeal, Vick was represented by Wanda H. Carter, Esquire, of the South Carolina Commission on Indigent Defense, who filed a <u>Johnson</u>[1] petition for a writ of certiorari that presented the following issue:

> The PCR judge erred in denying petitioner's claim that he did not voluntarily waive his right to testify at trial because trial counsel coerced him into not testifying in his defense in the case.

(ECF No. 34-11.) Vick filed a *pro se* response to the <u>Johnson</u> petition in which he raised the following issue:

> The PCR judge erred in denying petitioner's claim that states evidence exhibit 156 was not properly admitted. He erred also in his belief that even if exhibit 156 was not entered that the outcome of the trial would have been the same.

(ECF No. 34-14.) On January 23, 2014, the South Carolina Court of Appeals issued an order denying Vick's petition for a writ of certiorari. (ECF No. 34-16.) The remittitur was issued February 11, 2014. (ECF No. 34-17.) This action followed.

### FEDERAL HABEAS ISSUES

Vick's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:** Ineffective Assistance of Counsel
**Supporting Facts:** States chief evidence item 156 was never admitted as evidence but was used to gain conviction; Counsel failed to call DNA expert; Counsel failed to argue change of venue; Counsel failed to object to improper character witness; Counsel refused to interview witness or subpoena potential defense witness: Mr Mason, Mr Whipple; Counsel stipulated to DNA evidence that offered exculpatory facts; Counsel failed to strike juror due to close relation with [. . . .]

---

[1] <u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988) (applying the factors in <u>Anders</u> to post-conviction appeals).



**Ground Two:**  [BLANK]

**Ground Three:**  Ineffective Assistance of Counsel
**Supporting Facts:**  Failer to argue 3rd party [guilt] evidence at trial

(Pet., ECF No. 1) (errors in original).[2]

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

---

[2] To prevent confusion, this Report and Recommendation addresses Vick's grounds as they are listed in the Petition.  In light of the fact that Vick's Petition does not list any claim or argument under Ground Two, only Grounds One and Three are discussed.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear



error will not suffice") (internal quotation marks and citation omitted); <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011); <u>Humphries v. Ozmint</u>, 397 F.3d 206 (4th Cir. 2005); <u>McHone v. Polk</u>, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington</u>, 562 U.S. at 101 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)); <u>see also</u> <u>White</u>, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting <u>Harrington</u>, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. <u>Harrington</u>, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. <u>See id.</u> at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. <u>Id.</u> Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States

Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

**C.    Exhaustion Requirements**

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by



a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.    Summary Judgment Motion**

**1.    Procedural Default (Ground Three)**

The respondent argues that Ground Three, which alleges that trial counsel was ineffective in failing to argue evidence of third party guilt at trial, is procedurally barred from federal habeas review. Specifically, the respondent argues that this claim is being presented for the first time in Vick's Petition, pointing to Vick's own admission in his Petition that this claim was not raised during his direct appeal or his PCR proceedings. Therefore, this claim is procedurally defaulted from federal habeas review unless Vick can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A petitioner may establish a fundamental miscarriage of justice by showing that he is actually innocent of the crime for which he was convicted. However, to establish "actual innocence," a petitioner must produce new reliable evidence that was not presented at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999); see also Schlup v. Delo, 513 U.S. 298, 324, 327 (1995) (stating that to demonstrate "actual innocence," a petitioner must present "new reliable evidence . . . that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt").

Vick's response in opposition to the respondent's motion for summary judgment provides no arguments to meet this standard and fails to demonstrate that, based on any new reliable evidence,



it is more likely than not that no reasonable juror would have found him guilty. See Schlup, 513 U.S. at 327-29. In fact, Vick explicitly states that he is not arguing innocence at this time. Accordingly, Vick's claim of ineffective assistance based on trial counsel's failure to argue evidence of third party guilt is procedurally barred from federal habeas review, and the respondent's motion for summary judgment should be granted as to Ground Three.

### 2.    Ineffective Assistance of Trial Counsel (Ground One)

In Ground One, Vick alleges that trial counsel was ineffective (1) because State's Exhibit 156 was never admitted into evidence but was used to obtain his conviction; (2) in failing to call his DNA expert; (3) in failing to argue for a change in venue; (4) in failing to object to improper character evidence; (5) in refusing to interview witnesses or subpoena potential defense witnesses, Mason and Whipple; (6) in stipulating to DNA evidence; and (7) in failing to strike a juror for bias.

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's



unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court. As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Vick's petition. Therefore, the court will first consider whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts. Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state



court did not unreasonably misapply the <u>Strickland</u> test in determining that no Sixth Amendment violation occurred.

### a.    State's Exhibit 156 (Ground One(1))

The PCR court concluded that Vick failed to meet his burden of proof with regard to his claim that trial counsel was ineffective in failing to make sure that exhibit 156 was admitted into evidence. The PCR court observed that "[t]he allegation that exhibit 156 'was never admitted into evidence' is concerning because trial transcripts are usually clear on such matters." (App. at 1012, ECF No, 34-6 at 14.) The PCR court stated that trial counsel "testified that he was very diligent in making the State prove the chain of custody for each piece of evidence, including exhibit 156" and that Vick asserted that the transcript reveals that exhibit 156 was not admitted as evidence in the case. (<u>Id.</u>)

The PCR court proceeded to reasonably find and conclude as follows:

[T]his Court reads the record to reflect that exhibit 156 was admitted into evidence. The judge admitted it subject to DeGuglielmo's testimony and his testimony reads that he laid the necessary foundation. All of the attorneys used the exhibit as if it was admitted after this testimony was presented. Additionally, when the lawyers were processing the evidence for submission to the jury, exhibit 156 was expressly stated to have been admitted into the record. Any deficiency in the transcript is due to an error on the part of the reporter in not recording the item on the list of exhibits admitted during the trial. Nevertheless, this Court has reviewed the testimony of Gallman and DeGulielmo and traced the chain of custody of the DNA evidence gather[ed] from the victim which contained the alleged semen of the applicant. This testimony clearly indicates a secured chain of the evidence from Gallman to DeGulielmo, the secured evidence being received by DeGulielmo and tested by him that produced his report (his report being exhibit 188). Once a sample of DNA was obtained from the applicant in 2005, Gallman conducted her analysis, which resulted in her report that linked the DNA analyzed by DeGulielmo. Her report was exhibit 187. In addition to her report being admitted, Gallman presented direct testimony before the jury of her results, which linked the DNA taken from the victim to the DNA from the applicant. Assuming for the arguments sake, that the State somehow failed to formally meet the judge's prerequisite when exhibit 156 was conditionally



admitted into evidence, the chain of custody was clearly established for purposes of allowing the opinions from the experts that linked the DNA taken from the victim to the DNA taken from the Applicant. Even though this Court does not conclude the state failed to meet the judge's prerequisite when the judge conditionally admitted exhibit 156, this Court can conclude no reasonable probability that the trial's outcome would have been different. It was the opinions of the experts that linked the DNA taken from the victim to the DNA taken from the applicant, not the one exhibit.

(App. at 1012-13, ECF No. 34-6 at 14-15.)

In response to the respondent's motion for summary judgment, Vick challenges the PCR court's finding that exhibit 156 was admitted into evidence, arguing that the chain of custody was not established. Vick appears to argue that without exhibit 156 he would not have been convicted.

Upon careful review of the record, with specific reference to the PCR court's order, the court finds the PCR court's analysis to be reasonable and concludes that Vick cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim, which in this case included the Strickland test, or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). Therefore, Vick cannot show "there was no reasonable basis" for the state appellate court to deny relief. Harrington, 532 U.S. at 98. As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101.

Thus, for all of the reasons discussed by the PCR court, the court concludes that Vick has failed to establish that counsel's actions were error, much less that they were objectively unreasonable such that it rendered his performance deficient. Vick's arguments fail to demonstrate that any of the PCR court's findings were unreasonable nor have they shown that the PCR court's



analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Greene v. Fisher, 132 S. Ct. 38, 43 (2011) (observing that AEDPA's standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law is difficult to meet, because [its purpose] is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction") (citation and internal quotation marks omitted); Harrington, 562 U.S. at 101. Accordingly, the respondent's motion for summary judgment should be granted as to Ground One(1).

### b.    Other Claims of Ineffective Assistance of Counsel (Ground One(2)-(7))

As indicated above, with regard to the remaining claims of ineffective assistance of trial counsel, Vick presents no specific arguments in opposition to summary judgment; rather, he refers the court to the arguments that he presented to the PCR court. Therefore, the court addresses these allegations together.

### i.    Failure to Call Vick's DNA Expert

In denying and dismissing this claim, the PCR first found that trial counsel's testimony was substantially more credible than Vick's testimony. The PCR court observed that counsel testified that he hired an independent DNA expert to review the raw data and potentially testify; however, counsel explained that his expert's report, "unfortunately, stated that he could not disagree with the State's expert's findings." (App. at 1006, ECF No. 34-6 at 8.) Counsel stated that he and the expert met with Vick to explain these findings and that "it was a strategic decision to not call [his expert], as he agreed with the findings of the State's expert and would only reinforce the State's case." (Id.) The PCR court also observed that during the PCR hearing Vick acknowledged meeting with his



expert. Thus, the PCR court reasonably found that "DNA and DNA testing were clearly important issues in the tr[ia]l of the case. However, based on the presentation during the PCR hearing this Court can only conclude that the opinions of [the] DNA expert used by the Applicant's attorneys would have supported the state's case. Thus, it would have been illogical to call him at trial." (App. at 1006-07, ECF No. 34-6 at 8-9.) The PCR court also reasonably considered the fact that Vick did not produce any favorable expert witness testimony to support this claim, which would be required to show prejudice. The PCR court reasonably concluded that "while the Applicant was very articulate in his explanations of DNA analysis and the use of DNA, the Court cannot consider his testimony as expert testimony." (App. at 1007, ECF No. 34-6 at 9.)

### ii.    Failure to Argue for a Change in Venue

The PCR court stated that at the PCR hearing, trial counsel "presented the filed copy of the motion that was filed on Applicant's behalf and [it] included at least thirty articles referencing the case and Applicant." (App. at 1012, ECF No. 34-6 at 14.) The PCR court observed that Vick acknowledged that he was unaware that trial counsel had included all of that information with the motion. Thus, the PCR court reasonably found that "a substantial motion for the change of venue was presented to the trial judge and the selection process of jurors did not include the seating of jurors who were influenced by prior media coverage." (Id.)

### iii.    Failure to Object to Improper Character Evidence

The PCR court explained that in the PCR proceedings Vick alleged that trial counsel was ineffective "in failing to object to improper character evidence offered during Michael Pace's testimony." (App. at 1014, ECF No. 34-6 at 16.) The trial transcript reveals that the testimony at issue involves Pace's characterization of comments that Vick made just before Vick went to see the



victim for a haircut on the night at issue.  Pace first testified as to Vick's statements to Pace, which included statements describing what Vick would like to do to the victim.  Trial counsel's objection to this testimony was overruled.  (App. at 492-93, ECF No. 34-2 at 242-43.)  The solicitor questioned Pace about Vick's statement that he wanted to bend the victim over the barber chair, asking Pace if the comments were "primarily sexual in nature," and Pace said "yes."  (App. at 494, ECF No. 34-2 at 244.)  The PCR transcript reflects that Vick believed Pace's testimony agreeing that the statements were primarily sexual in nature made him appear to be a sexual deviant and that he intended to go over there and have sex with the victim.  (App. at 894-95, ECF No. 34-5 at 36-37.)

The PCR court observed that counsel stated that he did not believe there was a valid objection to Pace's statements.  Although the PCR court found that "it would not have been unreasonable for his trial attorney to object to the question based on a rule 404 argument," the PCR court further found that "the statement attributed to the Applicant would still have been admitted into evidence even if the judge had sustained the objection under 404." (Id.)  Additionally, the PCR court reasonably concluded that Vick failed to provide any evidence that trial counsel's failure to object prejudiced him in any way.

### iv.    Refusing to Interview Witnesses or Subpoena Potential Defense Witnesses

Vick alleges that trial counsel was ineffective in failing to either interview or call two witnesses, Mr. Mason and Mr. Whipple.  During the PCR hearing, Vick alleged that Mason would dispute evidence that Vick's family Bronco was near the scene on the night of the murder.  (App. at 965-70, ECF No. 34-5 at 7-12.)  Vick further suggested that Whipple would provide support to an alibi defense, as he lived at the apartment complex where Vick spent most of his time and

"practically lived there" around the time of the murder. However, Vick conceded that it may have been a weak alibi defense. (App. at 870-74, ECF No. 34-5 at 12-16.)

In denying and dismissing this claim, the PCR court found that trial counsel's testimony regarding these witnesses was credible. The PCR court observed that counsel explained that he had his investigator contact and interview Mason, but that counsel did not believe that Mason would be a helpful witness for the defense and therefore chose not to subpoena him. The PCR transcript further reflects that counsel testified that when his investigator spoke to Mason, "Mason was adamant at that point in time that the Bronco he saw was Mr. Vick's. So I didn't think that would help him out either." (App. at 955, ECF No. 34-5 at 97.) With regard to Whipple, the PCR court observed that counsel testified that he interviewed Whipple and counsel also determined that he would not be a good witness. Counsel explained that "Whipple had suffered a brain injury, which hampered Whipple's ability to establish the time frame for alibi purposes" and further counsel had concerns about Whipple's witness credibility. Counsel therefore "made a strategic decision to not call Whipple as a defense witness." (App. at 1006, ECf No. 34-6 at 11.) The PCR transcript also reveals that counsel stated that he recalled Whipple mentioning to him things about Vick "going and potentially wanting to have sex with another woman, and he couldn't exactly remember when," but counsel had some concerns that those statements might be deemed as referring to the victim. Additionally, counsel stated that there were concerns that there may be evidence that one of Vick's family members had promised to pay Whipple for his alibi testimony. (App. at 953-55, ECF No. 34-5 at 95-97.) Finally, in addition to counsel's testimony, the PCR court reasonably considered the fact that Vick did not produce either Mason or Whipple at the PCR hearing to demonstrate what their testimony would have been.



### v.    Stipulating to the DNA Evidence

The PCR court observed that trial counsel testified that the stipulated DNA evidence actually excluded Vick, which counsel believed was helpful to the defense.  The PCR court found that trial counsel's offered basis was reasonable and credible.  The PCR court reasonably found that trial counsel had articulated a valid strategic reason for stipulating to the evidence.  The fact that trial counsel's strategy was unsuccessful is insufficient to demonstrate that his performance was deficient.  See United States v. Roane, 378 F.3d 382, 404 (4th Cir.2004) ("Under the first prong of Strickland, we apply a 'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.' ") (quoting Strickland, 466 U.S. at 689).

### vi.    Failure to Strike a Juror for Bias

Vick alleged before the PCR court that trial counsel was ineffective in failing to strike a specific juror because of her bias, which Vick contended was an alleged relationship between the juror and the victim's friend.  The PCR court reasonably found that Vick's contention was based on speculation, pointing out that Vick stated "that he 'thought' [the juror] was not entirely truthful during the jury selection process; however, he offer[ed] no evidence or testimony to support this allegation."  (App. at 1011-12, ECF No. 34-6 at 13-14.)  The PCR court also observed that trial counsel stated that "he had no notes where the Applicant had indicated that [the juror] had any relationship with the victim or maintained any bias."  (App. at 1012, ECF No. 34-6 at 14.)

### vii.    Conclusion

As an initial matter, in denying and dismissing Vick's application, the PCR court found trial counsel's testimony to be credible, and for one claim found trial counsel's testimony to be more credible that Vick's testimony.  Vick has failed to challenge these findings and therefore has not




provided any information to clearly show that the credibility determination in the PCR court's order is without support. See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.'") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

Further, considering the above discussions of Vick's claims, the PCR court reasonably found that Vick failed to meet his burden of proof as to any of these claims of ineffective assistance of trial counsel. The PCR court reasonably concluded that Vick "failed to prove the first prong of the Strickland test—that counsel failed to render reasonably effective assistance under prevailing professional norms" where Vick "failed to present specific and compelling evidence that [] counsel committed either errors or omissions in his representation of the Applicant." (App. at 1015, ECF No. 34-6 at 17.) The PCR court further reasonably held that Vick "failed to prove the second prong of Strickland—that he was prejudiced by counsel's performance." (Id.)

Upon thorough review of the parties' briefs and the record in this matter, the court finds the PCR court's analysis to be reasonable and concludes that Vick cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting these claims or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). Thus, Vick cannot show "there was no reasonable basis" for the state appellate court to deny relief. Harrington, 562 U.S. at 98. As stated above, the Harrington court observed that "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101. As



indicated above, Vick does not provide any specific arguments with regard to the claims presented

in his Petition in his response to the respondent's motion for summary judgment; rather, he directs

the court to review his arguments presented to the PCR court.

Upon careful review of the record, including the PCR transcript and the PCR court's order,

for all of the reasons discussed by the PCR court, the court concludes that Vick has failed to establish

that trial counsel's actions were error, much less that they were objectively unreasonable such that

it rendered his performance deficient.  Vick has failed to demonstrate that any of the PCR court's

findings were unreasonable nor has he shown that the PCR court's analysis of these issues

misapplied clearly established federal law or, even if there was an error, that it was unreasonable.

See Williams, 529 U.S. at 410; see also Harrington, 562 U.S. at 101.  Accordingly, the respondent's

motion for summary judgment should be granted Ground One(2)-(7).

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary

judgment (ECF No. 33) be granted and Vick's Petition denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 18, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).